GEORGE R. BOOTS, Appellant, v. NORMAN B. WASHBURN et. al., Respondents.

Where a highway bridge in the town of G. was carried away by a flood shortly prior to the town meeting of 1873, *held*, that the commissioners of highways of the town, with the consent of the board of town auditors, were authorized to enter into a contract for the rebuilding of the bridge, under the provisions of the act providing for " the speedy construction and repair of roads and bridges," etc. (§ 1, chap. 103, Laws of 1858, as amended by chap. 442, Laws of 1865), which authorizes the commissioners of highways of a town, with such consent, where a bridge has been damaged or destroyed after a town meeting, to cause the same to be immediately repaired or rebuilt.

Also *held*, that the commissioners were authorized to contract to pay for the bridge upon the completion thereof, although they had no money in their hands for that purpose.

*It seems*, that in such case the commissioners have power, under said statute, to borrow money upon the credit of the town to pay for the bridge.

In an action upon such a contract, it appeared that the consent of the board of town auditors to the rebuilding of the bridge was given at its regular annual meeting, when all the members of the board were present; it did not appear whether the consent was in writing or not. *Held*, that, if requisite, it would be assumed that a record of the consent was properly made.

There were three commissioners of highways of the town, all of whom united in the determination to rebuild the bridge, and in the application to the board of auditors; also in the agreement upon the plan, and that the work should be by contract, the letting to be advertised. At the time the contract was let and entered into, one of the commissioners was absent, he not having received actual notice in time to attend; his name was signed to the contract by one of the other commissioners, who previously, by his consent, had signed his name to the advertisement; he afterwards, with knowledge of the facts, acted with the other commissioners in reference to the bridge without any objection, and never questioned the validity of the contract. *Held*, that the contract was to be treated as the valid contract of the three commissioners.

The complaint in the action set forth the contract, in which the defendants were described as commissioners, and that they signed it as such; they were not described in the summons and complaint as commissioners, and judgment was asked against them personally. *Held*, that plaintiff was properly nonsuited, because defendants were not sued officially as commissioners; that under the statute providing for actions upon such contracts (2 R. S., 473, § 92) it was necessary to specify "in the process, pleadings and proceedings their name of office;" that the statutory requirement was not merely formal, but matter of substance, to the end

that the amount collected might be allowed in the official account of the commissioners (2 R. S., 476, § 108) ; also as it affected the place of trial.

(Argued November 26, 1879 ; decided December 9, 1879.)

APPEAL from a judgment of the General Term of the Supreme Court, in the fourth judicial department, affirming a judgment in favor of defendants, entered upon a nonsuit.

This action was brought by the plaintiff, as assignee of one William Conley, upon a written contract executed by defendants, a copy of which was set forth in the complaint, and is as follows :

"Agreement made this 31st day of May, 1873, between John Washburn, N. B. Washburn and David A. Southerland, commissioners of the town of Gorham, and William Conley, of the town of Potter, Yates county. The said William Conley agrees, for and in consideration of the sum of one thousand dollars, to build a certain bridge across Flint Creek in the village of Gorham ; said bridge to be fourteen feet wide, and a foot path four feet wide on the south side ; a good, nice, and suitable railing on the said foot path — said bridge made and finished otherwise in the same manner as the bridge at Potter Centre ; the foundation to be spiles, to be driven nine feet below the water, unless struck by rock ; two rows — the first row close together, six in the back row, wings on each corner, on the north side six spiles, and sill to be below the water, sill to be framed to spiles, and bent to be framed to sill ; said bridge to be planked with three-inch white oak plank ; said bridge to be completed and ready for crossing on the 15th day of July, 1873; bridge to be paid for when finished and accepted by the commissioners.

[Signed]    " WILLIAM CONLEY,
            " N. B. WASHBURN,
            " JOHN WASHBURN,
            " DAVID A. SOUTHERLAND,
                        " *Commissioners.*"

Nowhere else in the complaint were defendants described as commissioners, but in it and in the summons they were

simply named as individuals, and judgment was asked against them as such.

The answer alleged, in substance, among other things, that defendants were in fact commissioners of the town at the time of entering into the contract, and that they executed it as such.

The further facts appear sufficiently in the opinion.

*Samuel Hand*, for appellant. The defendants being unauthorized to contract, as commissioners of highways, a debt against the town or their successors in office were liable individually. (*Mather* v. *Crawford*, 36 Barb., 564; *Barker* v. *Loomis*, 6 Hill, 463; *Van Alstyne* v. *Friday*, 41 N. Y., 174; *McCoy* v. *Curtice*, 9 Wend., 17; *Stewart* v. *Waller*, 30 Barb., 347; *Walker* v. *Dunspaugh*, 20 N. Y., 170.)

*H. L. Comstock*, for respondents. The action is not brought against the defendants in their official character, as commissioners of highways. (2 R. S., 473, 474, §§ 92, 93, 108; *Suprs. of Galway* v. *Stinson*, 4 Hill, 136; *Comrs. Highways* v. *Peck*, 5 id., 215; *Gould* v. *Glass*, 19 Barb., 179; *Paige* v. *Fazackerly*, 36 id., 392.) If the plaintiff desired to sue the defendants in their official character, he should not only have named them, but he should also have specified "in the process, pleading and proceedings, their name of office." (2 R. S., 476, § 96.) The defendants had authority to make the contract in their official character, as commissioners of highways, "by and with the consent of the board of town auditors, or a majority thereof." (Laws of 1865, chap. 442, § 1; 6 Edmonds' Stat. at Large, 485.) If the defendants have contracted so as to bind the town, or, rather so as to bind themselves in their official character, as commissioners of highways, for the contract price of building the bridge, they are not personally liable. (*Bellinger* v. *Bentley*, 4 N. Y. Sup., v. 71; *Brockway* v. *Allen*, 17 Wend., 40; *Stanton* v. *Camp*, 4 Barb., 274; *Randall* v. *Snyder*, 1 Lans., 163; *Becker* v. *Lamont*, 13 How. Pr., 23; *Randall* v. *Van*

*Vechten*, 19 J. R., 60; *Haight* v. *Schaler*, 30 Barb., 218.) There was no want of power to bind the town, or the commissioners in their official character, for the contract price of building the bridge. *Hover* v. *Barkhoof*, 44 N. Y., 113; *Bryan* v. *Landon*, 5 N. Y. Supr. Ct., 594; *Robinson* v. *Chamberlain*, 34 N. Y., 389.) The power to cause the bridge to be built being granted, all the powers necessary for the exercise of this power are implied. (*Ketcham* v. *City Buffalo*, 21 Barb., 294; S. C. on Appeal, 14 N. Y., 356; *People* v. *Lowber*, 28 Barb., 65; *People* v. *Brennan*, 39 id., 522, 545; *Peterson* v. *Mayor, etc., N. Y.*, 17 N. Y., 449, 452.)

Earl, J. The facts of this case, as I understand them, are as follows: The defendants were, in the years 1872 and 1873, the commissioners of highways of the town of Gorham, Ontario county. A highway bridge was carried away by a flood in the spring of the year of 1873 before the town meeting, and the defendants applied to the board of town auditors for their consent to rebuild the bridge, and the consent was given. They then proceeded to let the contract for rebuilding the bridge, and May 31, 1873, let it to William Conley for the price of $1,000. He assigned the contract to the plaintiff, who built the bridge. The defendants were described in the contract as "Commissioners of the town of Gorham," and they signed it as commissioners. It provided that the bridge should be completed on the fifteenth day of July, and that it should be paid for "when finished, and accepted by the commissioners."

After the bridge was built, the defendants, upon the demand of the plaintiff, refused to pay him the contract price, claiming that the bridge was not built as required by the contract. The plaintiff then commenced this action. The defendants are not described in the summons or complaint as commissioners of highways, but the contract is set out at length and judgment is demanded against them personally for the amount claimed. The answer denies the complaint generally, sets up that the defendants made the contract

officially as commissioners of highways, and that they are not liable to be prosecuted individually ; and alleges that the plaintiff did not build and complete the bridge according to the contract, and in consequence thereof they claim damages.

Upon the trial, the plaintiff was nonsuited, on the ground that he had not sued the defendants officially, as commissioners of highways ; and whether or not he was properly nonsuited, presents the sole question for our consideration.

I do not understand that it is questioned that the defendants contracted in form as commissioners of highways, in their official capacity. But the plaintiff seeks to maintain his appeal upon either one of two inconsistent grounds. He contends, first, that the contract was legally made by the defendants as commissioners, and that he has sued them as such ; second, that while they contracted officially, they had no power to do so, and hence that they are bound individually, and that the suit may be treated as one against them individually.

The defendants claim that the contract was legally made by them, as commissioners of highways, and that they have not been sued in their official capacity. They do not, however, dispute, as I understand it, that they are liable individually, if they made the contract without authority and are not, therefore, officially bound thereby.

I am of opinion that the defendants were authorized to make the contract, and that they were legally bound thereby, as commissioners of highways.

This bridge was carried away after the town meeting of 1872 and shortly before the town meeting of 1873; and hence the defendants were authorized to rebuild it, under chapter 442 of the Laws of 1865, provided they first obtained the consent of the board of town auditors. This consent they obtained. They made application for it to the board at their regular annual meeting, when all the members thereof were present. It does not appear that the consent was in writing, nor does

it appear that it was not. If necessary, it might be assumed that a record of it was properly made.

The objection that the contract was not made by all the commissioners, is not well taken. They all united in the application to the board of auditors. They all determined that the bridge must be rebuilt; and they agreed upon the plan, and that the contract should be let, and that the letting should be advertised. At the time the contract was let under the advertisement and the contract was actually made, John Washburn, one of the commissioners, was not present, not having received actual notice in time to attend. But his name was signed to the contract by one of the other commissioners, as it had been, by his consent, to the advertisement. It may be doubted if any other notice to him was necessary than that given in the public notice of the letting. thus signed by him. But he afterwards knew that the contract was let, and that his name was signed thereto, and he never made any objection to it, but acted with the other commissioners in reference thereto, thus recognizing the same, and he does not now, and never did repudiate the contract. His claim now is that the contract was a valid, binding contract upon the commissioners as such. Under such circumstances I think it is quite clear that the contract must be treated as the valid contract of the three commissioners.

The further claim is made that the contract did not bind the commissioners officially, because they exceeded their authority in agreeing therein to pay for the bridge upon the completion thereof, as they did not then have the money, and had no authority to create a debt against the town. The Law of 1865 amended section 1 of chapter 103 of the Laws of 1858, and it provided that after obtaining the consent of the town auditors, the commissioners should cause the bridge "to be immediately repaired or rebuilt." This they could do by purchasing the materials and building the bridge by days work, or they could let the entire contract for a gross sum. In either event, they would, in some sense, create a debt against the town for which they acted. They could

not well discharge their duty in any other way. They were certainly not obliged to build the bridge at their own expense or upon their own credit, and could do no otherwise than to build it at the expense and upon the credit of the town; and I am inclined to think that they had implied authority to borrow the money upon the credit of the town. It could make no difference with the town, whether it owed the bridge builder, or a person who loaned the money to build the bridge. The power to borrow seems to be plainly contemplated by the statute of 1865, as that provides that "the commissioners of highways shall present the proper vouchers for the expense thereof to the town auditors, at their next annual meeting, and the said bill shall be audited by them, and the amount audited thereon shall be collected in the same manner as amounts voted at town meetings as now required." It is clearly implied from this language that the commissioners might pay for the work as it was done; that they should take vouchers for the payments, and present them for audit; and that they should either pay thereon money to be reimbursed to them by the town, or that they might borrow it, to be subsequently paid by the town. It appears, in this case, that the commissioners borrowed the money; but whether they borrowed it upon their own credit, or upon that of the town, does not appear. It is clear, therefore, that there was no excess of authority in agreeing to pay for the bridge when completed.

It is true that, instead of agreeing to pay for the work when completed, and then, in case of payment, having their vouchers audited as provided in section one, they could have purchased the material and employed labor, leaving the persons who furnished the material and labor to have their claims audited by the board of auditors, specially convened for that purpose under sections two and three of the Law of 1858; but they were not obliged to do it in that way.

I conclude, therefore, that the defendants had authority to agree to pay the plaintiff when he completed the bridge;

and that he had no concern with the manner in which or the source from which they obtained or proposed to obtain the money to pay him.

The contract was, therefore, a valid contract binding upon the defendants officially as commissioners of highways, and they should have been sued as such. Actions against commissioners of highways are required to "be brought against them individually, specifying in the process, pleadings and proceedings, their name of office:" (2 R. S., 473, § 92); and when thus commenced, the action shall not "be abated or discontinued by the death of such officers, their removal from or resignation of their offices, or the expiration of their term of office; but the court in which any such action shall be pending shall substitute the names of the successors in such offices, upon the application of such successors or of the adverse party:" (2 R. S., 474, § 100); and in such actions, the judgment "shall be collected in the same manner as against individuals; and the amount so collected shall be allowed to them in their official accounts: (2 R. S., 476, § 108.) Here the defendants are not named in the summons or complaint as commissioners of highways, and there is nothing to indicate that the suit is against them as such. The suit is plainly one against them as individuals.

These requirements of the statute are not merely formal, but are matters of substance, that the successors, if any, in office of the defendants could be substituted, and that any amount collected against them upon any judgment might be allowed to them in their official accounts, and also in reference to the place of trial.

The plaintiff was, therefore, properly nonsuited. The defendants at no time claimed that they were not officially bound by the contract, and they never repudiated it. At the first opportunity, they pointed out the defect in the pleading. Their objection was sustained at the Circuit, at the Special Term, and at the General Term. The defect was one easily remedied; and now when the plaintiff has brought his case here with a persistence worthy of a better cause, he

cannot justly complain that the test of the statute is strictly applied to his proceedings.

The judgment must be affirmed, with costs.

All concur.

Judgment affirmed.